**Alu-Door Corporation v. Todi**

*Mark S. Haltzman,* for plaintiffs.
*Leigh Narducci,* for National Doors, Lahiri, Bourknight and Mordaunt.
*Christopher Rush,* pro se.

SOKOLOVE, *J.,* November 20, 1995—

## ADJUDICATION

This heavily litigated matter concerns disputes between a Pennsylvania business corporation which manufactures and sells metal doors and its former employees, a new corporation they formed and their new business partner. In brief, without elaborating on the multiple rounds of preliminary objections and amended complaints, the plaintiff, Alu-Door Corporation, filed an action in equity seeking to enjoin its prior employees, Samir C. Lahiri, Christopher Rush, Timothy Mordaunt and Nate Bourknight Jr., their new corporation, National Doors Inc. and their new partner in that venture, Nand Todi,[1] from wrongfully competing with it and interfering with its established business contracts. Plaintiff also sought compensatory damages from the defendants for the losses it suffered as the result of defendants' improper usurpation of its business opportunities.

At an early hearing on plaintiff's petition for a temporary restraining order, we ordered, in pertinent part, that any checks payable to plaintiff which were received

---

1. Defendant Rolly Door Inc. was incorporated by defendant Lahiri before plaintiff's incorporation. Its activities have not been a focal point of these proceedings, which have centered on the business of defendant National Doors, the new business entity. We also note that plaintiff's second amended complaint, the last complaint it filed, contained no claims against Rolly Door Inc.

by defendant National Doors were to be held in escrow by the attorney for defendant Lahiri. Then, after four hearings on plaintiff's petition for a preliminary injunction, the parties entered into an agreed order that, pending final resolution of the matter, defendants would not sell doors of the type sold by plaintiff to any of plaintiff's customers denoted on a certain list and defendants would not use marketing materials, product identifications or trade logos similar to plaintiff's. We further ordered at that time that counsel would escrow 25 percent of the proceeds of National Doors' sales to a particular customer, Tim Ruttle Hardware, who had a requirements contract with the federal government. The 25 percent figure, it was stipulated, represented National Doors' profit margin on those sales.

In the midst of extensive discovery, defendants Todi, Rush, Mordaunt, Bourknight and National Doors filed an answer, new matter and counterclaim to plaintiff's second amended complaint. In the new matter, National Doors claimed a setoff in the amount of $76,021.61 for plaintiff's wrongful retention of inventory, personal property, tools and equipment belonging to National Doors. In the counterclaim, defendant Rush claimed $2,333 in back wages, defendant Mordaunt claimed $600 in back wages and defendant Bourknight claimed $1,000 in back wages. Plaintiff sought a dismissal of National Doors' allegation of setoff, asserting that National Doors had filed an action in replevin and conversion in the Court of Common Pleas of Montgomery County, Pennsylvania for the same property forming the basis for the setoff. Because trial was imminent, we refused, in one of numerous conferences, plaintiff's motion to dismiss (or "abate," as termed by plaintiff) the setoff claim.

At the beginning of trial, which consumed several days over the course of two months, defendant Todi entered into a consent decree with plaintiff in which he agreed not to compete with plaintiff or utilize or disclose any of its proprietary information for a period ending July 14, 1997 and to reimburse plaintiff for a portion of its expenses. Contingent upon Todi's compliance with the consent decree, plaintiff's complaint against him was deemed to be withdrawn. On the final day of trial, defendant Bourknight withdrew his counterclaim for back wages with prejudice.

At the conclusion of the trial, on July 25, 1995, we entered an order from the bench in which the preliminary injunction was made final, a nonsuit was awarded on defendants' claim for setoff for the value of inventory in the claimed amount of $63,106.61 because defendants had failed to prove the value of that inventory and defendant Mordaunt was awarded $300 on his counterclaim for back wages. We reserved ruling on plaintiff's claims for compensatory damages and defendants' setoff for personal property, tools and equipment set forth on exhibit "C" to their answer, new matter and counterclaim. We directed counsel to supply us with proposed findings of fact and conclusions of law on these few remaining issues, with the understanding that post-trial motions could be filed to our entire decision after our ruling on these outstanding claims.

After receipt and review of the parties' submissions and our perusal of the record, we enter this adjudication addressing solely the matters left unresolved by our July 25 order. We will not repeat our reasons for the permanent injunction, the partial nonsuit on defendants' setoff, nor the award to defendant Mordaunt. Our de-

cision on those grounds has already been adequately explained on the record. Plaintiff has pointed out to us that we overlooked defendant Rush's counterclaim, which we will consider in this opinion.

## FINDINGS OF FACT

(1) Defendants received $10,197.10 in funds due to plaintiff for products manufactured by plaintiff. These funds belonged to plaintiff.

(2) Defendants received $60,664.48 for sales improperly made to plaintiff's established customers.

(3) Plaintiff lost profits of $15,166.17, which is 25 percent of the total revenues of $60,664.48, on defendants' wrongful sales to plaintiff's customers.

(4) The escrowed funds of 25 percent of defendants' sales to Tim Ruttle Hardware are a part of plaintiff's $15,166.17 in lost profits.

(5) Defendant Christopher Rush offered no proof for his counterclaim for back wages.

(6) The certain 1978 Ford truck involved in this litigation belongs to plaintiff.

(7) The certain Clark forklift enumerated on exhibit "C" to defendants' answer, new matter and counterclaim was purchased by plaintiff and belongs to plaintiff.

(8) The following items listed on defendants' exhibit "C" were purchased by plaintiff's owner, Dinesh Chawla, for plaintiff from Alumax Building Products Inc. and belong to plaintiff: Skil belt sander model no. 595, seven large staple guns and six small staple guns.

(9) The following items listed on defendants' exhibit "C" belong to defendant Lahiri: Cresson Morris saw S no. 1337, circular Skil saw 2 H.P., 5" Makita disc

grinder S no. 1039732, Black & Decker jigsaw model no. 7560, Bosch reciprocating saw model no. 0601632, Skil 1/2" hammer & drill, 3/8 drill (Ram Tool Corp. make), 1/2" drill, misc. screw box, bead nail gun, five air drills, air drill straight, three rolls steel bands, steel band tensioner, crimper and clip for steel strap.

## DISCUSSION

Our decision on the compensatory damages owed to plaintiff derives from our determination of the credibility of witnesses who testified repeatedly before us. We believed the testimony of plaintiff's office manager, Andrea Muffley, and did not believe the far-fetched testimony of defendant Samir C. Lahiri on this subject. Also with respect to the offsets for the Ford truck and the Clark forklift, we found Lahiri's testimony to be unpersuasive in light of credible evidence to the contrary. The truck was titled in plaintiff's name, and plaintiff had a receipt showing its payment for the forklift. Similarly, defendant Lahiri's blanket statements could not withstand the conflicting evidence of ownership shown in Chawla's asset purchase agreement for the belt sander, the seven large staple guns and the six small staple guns. We are, however, constrained to find that the remaining articles detailed on exhibit "C" were brought by Lahiri into plaintiff's business, and he continued to own them. Plaintiff proffered no evidence whatsoever on these articles. Since defendants placed no value on this property but merely requested its return, we will direct that plaintiff return such property to Lahiri.

Plaintiff argues that we are without authority to order the return of the property to Lahiri inasmuch as defendants claimed a setoff and did not plead in replevin, defendant Lahiri did not actually file a counterclaim

for the property and defendant National Doors pursued a replevin action in another jurisdiction. In the interest of judicial economy and the spirit of the Pennsylvania Rules of Civil Procedure,[2] we will dispose now of this relatively minor matter, which even by defendants' claim amounts to property worth little more than $3,000. We will also remind plaintiff and its counsel that we have liberally ignored the defects in their pleadings as well.

## CONCLUSIONS OF LAW

(1) This court has jurisdiction over the subject matter of this action and the parties to it.

(2) Defendants owe plaintiff $10,197.10 for their receipt of proceeds for the sale of products manufactured by plaintiff.

(3) Defendants owe plaintiff $15,166.17 for its lost profits on defendants' improper sales to plaintiff's customers, including the escrowed funds from sales to Tim Ruttle Hardware.

(4) Defendant Christopher Rush's counterclaim fails for lack of proof.

(5) Plaintiff shall return the items listed in our finding of fact no. 9 to defendant Lahiri after it has received the funds owing to it from defendants.

---

2. Pa.R.C.P. 126 provides that "the rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceedings may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

Pa.R.C.P. 1033 permits an amendment at any time to conform the pleadings to the evidence offered or admitted.

## DECREE NISI

And now, November 20, 1995, it is hereby ordered and decreed that plaintiff is awarded the sum of $25,363.27 from defendants, which sum includes the Tim Ruttle Hardware receipts previously ordered to be escrowed, the counterclaim of defendant Christopher Rush is denied and dismissed and plaintiff shall return the items listed above in finding of fact no. 9 to defendant Samir C. Lahiri upon full satisfaction of its award. If no post-trial motions are filed to this decree nisi within 10 days of its receipt by the parties or their counsel of record, the prothonotary upon praecipe of a party, shall enter this decree nisi as a final decree and enter judgment thereon.